AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

| | | |
|---|---|---|
| Langston Patterson, et al. *Plaintiff* | ) | |
| v. | ) | Civil Action No. 3:25-cv-00994 |
| National Collegiate Athletic Association *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Texas A&M University, c/o R. Brooks Moore, General Counsel
301 Tarrow Street, College Station, TX 77840

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A.

| Place: TransPerfect Legal Solutions<br>2 Riverway, Suite 705<br>Houston, TX 77056 | Date and Time:<br>09/08/2026 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/10/2026

*CLERK OF COURT*

____________________
*Signature of Clerk or Deputy Clerk*

OR

/s/ Ryan Downton
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiffs Langston Patterson, et al. , who issues or requests this subpoena, are:
Ryan Downton, 875 Carr 693, Ste. 103, Dorado, PR 00646, Ryan@TheTexasTrialGroup.com, (512) 680-7947

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:25-cv-00994

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________

on *(date)* 8/12/26 .

☐ I served the subpoena by delivering a copy to the named person as follows: ______________________

______________________ on *(date)* 8/17/26 ; or

☐ I returned the subpoena unexecuted because: ______________________

______________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 8/17/26 [signature] PSC 10801 Exp 4/30/28

*Server's signature*

Luke Pruett

*Printed name and title*

______________________

*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**BAKER BOTTS** L.L.P.

700 K STREET, N.W.
WASHINGTON, D.C.
20001

TEL +1 202.639.7700
FAX +1 202.639.7890
BakerBotts.com

AUSTIN
BRUSSELS
DALLAS
DUBAI
HOUSTON
LONDON

NEW YORK
PALO ALTO
RIYADH
SAN FRANCISCO
SINGAPORE
**WASHINGTON**

August 10, 2026

JoAnna Adkisson
TEL: 2022514955
joanna.adkisson@bakerbotts.com

RE: Subpoena in *Patterson v. NCAA*, No. 3:25-cv-00994; *Boyd v. NCAA*, No. 3:25-cv-00729; and *Pavia v. NCAA*, No. 3:24-cv-01336 (M.D. Tenn.)

Counsel:

Enclosed for service is a subpoena issued in the above-captioned actions.

To confer regarding the subpoena or address any questions concerning compliance, please direct all communications to each of the following members of Plaintiffs' counsel's discovery team by email so that we can respond as promptly as possible:

- JoAnna B. Adkisson — joanna.adkisson@bakerbotts.com
- Amanda Kusick — amanda.kusick@bakerbotts.com
- Bradley Bennett — bradley.bennett@bakerbotts.com
- Jessie Joyce — jessie.joyce@bakerbotts.com

Respectfully,

JoAnna Adkisson

JoAnna Adkisson

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | |
|---|---|
| **DIEGO PAVIA, et al.,**<br>**Plaintiffs,**<br>**v.**<br><br>**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**<br>**Defendant.** | **Case No. 3:24-cv-01336**<br><br>**Chief Judge William L. Campbell, Jr.**<br>**Magistrate Judge Luke A. Evans** |
| **LANGSTON PATTERSON, et al.,**<br>**Plaintiffs,**<br>**v.**<br><br>**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**<br>**Defendant.** | **Case No. 3:25-cv-00994**<br><br>**Chief Judge William L. Campbell, Jr.**<br>**Magistrate Judge Luke A. Evans** |
| **DERRIN BOYD,**<br>**Plaintiff,**<br>**v.**<br><br>**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**<br>**Defendant.** | **Case No. 3:25-cv-00729**<br><br>**Chief Judge William L. Campbell, Jr.**<br>**Magistrate Judge Luke A. Evans** |

**PLAINTIFFS' NOTICE OF SUBPOENA TO TEXAS A&M UNIVERSITY**

PLEASE TAKE NOTICE that pursuant to Rules 34(c) and 45 of the Federal Rules of Civil Procedure, Plaintiffs Langston Patterson, Nicholas ("Nick") Levy, Nathanial Vakos, Kevin Gallic, Lance Mason, Chad Maurice ("CJ") Taylor Jr., Quincy Skinner Jr., Brayden Schager, Bernard ("BJ") Harris Jr., John ("Johnny") Luetzow, Henry Stewart, Jakob Russell, Justine Pissott, Ndjakalenga ("Jak") Mwenentanda, Lawson Lovering, Ellie Geoffroy, Xcaret ("X") Pineda, Reese Ragland, Timo Legout, Diego Pavia, Christopher Bellamy, Demarcus Griffin, TJ Smith, Tre Richardson, Trent Hudson, Andrew Burnette, James Djonkam, Iman Oates,

Azariah ("Bear") Levells, Jacob De Jesus, David Murphy, Ja'ir Smith, Anthony Frias II, Amani Givens, Zelmar Vedder, Alexander Capka-Jones, and Derrin Boyd (together, "Plaintiffs") are serving the attached subpoena (the "Subpoena") upon Texas A&M University seeking production of documents described in Exhibit 1 attached to the Subpoena. The Subpoena is without prejudice to the service of additional subpoenas for documents or testimony upon other entities in this action.

DATED: August 10, 2026

Respectfully,

/s/ Ryan Downton
Ryan Downton (*Admitted to M.D. Tenn.*)
Texas Bar No. 24036500
**THE TEXAS TRIAL GROUP**
875 Carr 693, Ste. 103
Dorado, PR 00646*
(512) 680-7947
Ryan@TheTexasTrialGroup.com
*Ryan Downton is licensed in Texas, not Puerto Rico

/s/ Salvador M. Hernandez
Salvador M. Hernandez (# 020121)
Milton S. McGee III (# 024150)
**RILEY & JACOBSON, PLC**
1906 West End Ave.
Nashville, TN 37205
P: (615) 320-3700
F: (615) 320-3737
shernandez@rjfirm.com
tmcgee@rjfirm.com

*Counsel for Plaintiffs and the Proposed Classes*

**EXHIBIT 1**

**DEFINITIONS**

A. "Academic Year" means the period customarily used by NCAA or its Member Institutions for eligibility, participation, and roster reporting (*e.g.*, 2022-2023) and includes the corresponding athletic season(s), recruiting cycle, and any associated reporting cycles used by NCAA.

B. "Actions" means the cases captioned *Patterson, et al. v. NCAA* now pending in the United States District Court for the Middle District of Tennessee with the Case No. 3:25-cv-00994, *Pavia, et al. v. NCAA* now pending in the United States District Court for the Middle District of Tennessee with the Case No. 3:24-cv-01336, and *Boyd v. NCAA* now pending in the United States District Court for the Middle District of Tennessee with the Case No. 3:25-cv-00729.

C. "All," "any," or "each" shall be construed to mean "any and all."

D. The terms "and" and "or" shall be construed conjunctively or disjunctively, as necessary, to make a Request inclusive.

E. "Athletic Scholarship" means any education-related financial awards, including grants-in-aid, education-related financial benefits (also known as "*Alston* Awards"), and/or any benefits such as tuition, room and board, books, and/or other aid provided by the NCAA, Conference, School, or related entity, tied to athletic participation.

F. "Age-Based Eligibility Rule" or "Five-Year Rule" means the NCAA Division I eligibility framework adopted in or about June 2026 under which eligible Division I College Athletes generally may compete for five seasons during a five-year eligibility period.

G. "College Athlete" means a student-athlete who enrolls or is enrolled in a college or university and participates in intercollegiate athletics.

H. "Communication" means any transmission, exchange, or dissemination of information, whether oral, written, electronic, or otherwise (including facts, ideas, inquiries, or other content), by any medium, including but not limited to telephone, email, memorandum, bulletin, presentation, or other forms of communication You created, sent, received, or maintained.

I. "Complaint" means Plaintiffs' Amended Complaints filed on November 10, 2025, January 6, 2026, and October 27, 2025, respectively, in the United States District Court for the Middle District of Tennessee in the above captioned Actions.

J. "Conference" means any NCAA Member Conference and its constituent entities.

K. "Data" means all information, content, or material, in any form or medium, whether electronic, digital, or tangible, including but not limited to facts, statistics, records, files, text, images, audio, video, or other information that You created, collected, stored, transmitted, or processed.

L. "Databases" means any systems, applications, platforms, software, tools, or repositories used to create, collect, store, process, transmit, manage, or analyze Data, including but not limited to databases, data warehouses, data lakes, information systems, and cloud-based or on-premises environments.

M. "Division I" or "DI" refers to NCAA Division I athletic programs.

N. "Document" shall be synonymous in meaning and equal in scope to the term "documents or electronically stored information" as used in Federal Rule of Civil Procedure 34(a)(1)(A), and shall include all tangible and electronic information, whether printed, typed,

recorded, electronic, filmed, or handwritten, including originals, drafts, duplicates, annotated versions, and non-identical copies.

O. "Eligibility Exception" means any waiver, appeal, medical hardship, medical redshirt, legislative relief, COVID-19 eligibility extension, blanket waiver, extension of eligibility, or other deviation from NCAA eligibility requirements.

P. "Eligibility Rules" means any NCAA constitution, bylaw, interpretation, policy, directive, waiver standard, legislative relief, or other rule governing a College Athlete's eligibility to participate in Division I athletics, including but not limited to seasons-of-competition rules, five-year eligibility rules, delayed-enrollment rules, transfer rules, participation limits, redshirt rules, eligibility waivers, and the Age-Based Eligibility Rule.

Q. "Entity" means any person or group organized for a specific purpose, including corporations, LLCs, nonprofits, or unregistered organizations.

R. "Former Eligibility Rules" means the NCAA eligibility rules governing Division I participation before adoption of the Age-Based Eligibility Rule, including the Four Seasons Rule and applicable Redshirt Rules.

S. "Four Seasons Rule" refers to NCAA Bylaw 12.6 stating that a student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport.

T. "Identify" with respect to any Data means to provide the (i) source(s) of the data, (ii) descriptions of the data, (iii) dates of the transactions reflected in the data, (iv) dates the data was created, (v) person(s) who created the data, (vi) custodian(s) who maintain(ed) the data, and (vii) the software and/or programs You have used to compile and review the data.

U. "Identify" with respect to any Document(s) means to provide the (i) type of document; (ii) its general subject matter; (iii) date of the document or date range if applicable;

and (iv) author(s), addressee(s), and recipient(s). In the alternative, You may produce the Documents, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d), such as providing the production volume name containing the documents and individual bates labels/ranges for the documents themselves.

V. "Including" shall mean "including, without limitation."

W. "Member Conference" means a group of colleges and/or universities that conducts competition among its members and determines a conference champion in one or more sports (in which the NCAA conducts championships or for which it is responsible for providing playing rules for intercollegiate competition), duly elected to conference membership under the provisions of the bylaws of the NCAA.

X. "Member Institution" means any institution that participates in NCAA Division I athletics.

Y. "NCAA" means the National Collegiate Athletic Association and its officers, employees, governance bodies, agents, contractors, representatives, and any affiliated committees and working groups.

Z. "NIL" means name, image, and likeness.

AA. "NIL Agreement" means any agreement or arrangement under which a College Athlete receives or may receive compensation in connection with the athlete's NIL rights.

BB. "NIL Compensation and Consideration" means monetary earnings, in-kind value, or any other form of consideration that College Athletes may receive based on their NIL rights.

CC. "NIL Collectives" means any entity, group, or organization, regardless of its official or unofficial affiliation with the NCAA or a Member Institution, that

administers, organizes, funds, or facilitates NIL Agreements and Deals and/or NIL Compensation and Consideration for College Athletes.

DD. "Participation Records" means any documents or data reflecting a College Athlete's involvement in intercollegiate competitions, practices, or scrimmages, including games played, minutes played, bench status, or other participation in team activities.

EE. "Person" refers to any natural person or legal entity, including corporations, associations, partnerships, joint ventures, trusts, estates, or any other organization. The actions of a Person shall include the actions of directors, officers, owners, members, employees, agents, attorneys, or other representatives acting on a Person's behalf.

FF. "Redshirt" refers to the practice recognized under NCAA Bylaws by which a College Athlete may practice with their team but may not compete (or may not compete in more than four contests in a season) during any year of full-time college enrollment.

GG. "Redshirt Rule" refers to the term of art describing how a College Athlete may preserve a season of competition by not competing (or not competing in more than four contests in a season) under several interrelated provisions of the NCAA Division I Manual including, *inter alia*: Bylaw 12.6.1.7.1(a), Bylaw 12.6.3.1.6, and Bylaw 14.3.1.2.

HH. "Relevant Time Period" means August 1, 2015, through the date of Texas A&M University's substantial completion of its production, unless a Request expressly provides a different period.

II. "Revenue Sharing" and/or "Direct Payment" means compensation paid, funded, administered, or directed by the NCAA, a Conference, or a School to College Athletes, including but not limited to, roster payments and revenue share.

JJ. "Roster Status" means a College Athlete's status with respect to a team's roster, including recruited, committed, signed, active, inactive, redshirted, medically unable to compete, removed, retained, non-renewed, transferred, or otherwise designated by the Member Institution.

KK. "Scholarship" means any education-related financial awards, including grants-in-aid, education-related financial benefits (also known as "*Alston* Awards"), and any benefits such as tuition, room and board, books, or other aid provided by the NCAA, Conference, School, or related entity.

LL. "Scholarship Status" means the classification of a Division I College Athlete as a full scholarship athlete, partial scholarship athlete, or non-scholarship athlete participating in NCAA DI intercollegiate sports.

MM. "Sufficient to show" means sufficient to permit Plaintiffs to identify, quantify where applicable, and analyze the subject matter described in the Request, including the ability to link and interpret responsive Data using ordinary relational identifiers or other consistent identifiers maintained by You.

NN. "System-level information" means documentation sufficient to understand and use a system or Database, including data dictionaries, schema descriptions, field definitions, relational keys or identifiers, reporting specifications, user manuals, data submission requirements, and change logs reflecting material system changes.

OO. "Texas A&M University," "Texas A&M," "You," or "Your" means Texas A&M University and its officers, employees, agents, representatives, committees, boards, and affiliated entities.

PP. "Transition Exclusion" means the NCAA policy, rule, interpretation, directive, or transition provision that excludes certain College Athletes who completed or were deemed to have completed a fourth season of competition during the 2025-26 Academic Year from receiving the benefits of the Age-Based Eligibility Rule.

## INSTRUCTIONS

1. Unless otherwise specified in a particular Request, the Relevant Time Period applicable to these Requests is the Relevant Time Period defined above. Each Request shall be construed to include Documents and Data created outside the Relevant Time Period if necessary to understand, interpret, or place into context responsive Documents or Data created during the Relevant Time Period.

2. For each Request seeking Documents or Data "sufficient to show," You shall produce Documents or Data sufficient to permit Plaintiffs to identify, understand, analyze, and quantify the requested subject matter. A Request seeking Documents or Data "sufficient to show" may be satisfied by producing existing reports, summaries, spreadsheets, databases, dashboards, extracts, or other responsive materials maintained in the ordinary course of business. A Request seeking Documents or Data "sufficient to show" shall not be satisfied solely by attorney argument, conclusory narrative responses, or unsupported descriptions in lieu of responsive Documents or Data.

3. These Requests seek all responsive Documents and Data within Your possession, custody, or control, including Documents and Data maintained by Your departments, athletic programs, compliance offices, financial aid offices, business offices, information technology personnel, contractors, consultants, agents, and third-party service providers where You have the legal right or practical ability to obtain such Documents or Data in the ordinary course of business.

4. If You contend that no responsive Documents or Data exist with respect to any Request, please so state in writing.

5. Each Document should be produced in the manner, form, and position in which they are kept in the ordinary course of business, as required by the Federal Rules of Civil Procedure, including, where applicable, any index tabs, file dividers, designations, or other information as to the location of the Documents.

6. For any Request seeking Data, database fields, or system-level information, You shall produce responsive Data in a reasonably usable electronic form, including native or delimited formats (e.g., CSV, XLSX, SQL export, or other reasonably accessible format), together with documentation sufficient to interpret and use the Data, including data dictionaries, field definitions, and descriptions of relational keys or identifiers where applicable.

7. Nothing in these Requests requires You to create new analyses or reports; however, You must produce responsive existing reports, dashboards, extracts, queries, summary tables, presentations, or other compilations maintained in the ordinary course, including existing outputs, and routine exports or reports generated from Your systems or Databases in the ordinary course.

8. Each Request shall be read to be inclusive rather than exclusive. Accordingly, connectives "and" or "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the Request all information that otherwise might be construed as falling outside of its scope. The word "all" includes "any" and vice versa. The past tense includes the present tense and the present tense includes the past tense. The use of the singular form of any word includes the plural form and vice versa. The masculine form of any word includes the feminine form and vice versa.

9. If You withhold any responsive Document or Data under a claim of attorney-client privilege, work-product protection, common-interest protection, FERPA, privacy protection, or any other privilege or protection, identify each withheld item on a privilege log sufficient to permit assessment of the asserted protection, including the date, author, recipients, general subject matter, and the specific privilege asserted.

10. Where an objection is made to a Request, state all grounds upon which Your objection is based. If You object to any Request in part, respond to the extent that it does not claim the Request to be objectionable. If You cannot provide a full and complete response to any Request, You should respond to the Request to the extent possible, specifying the portion of the Request You are unable to answer and providing any information it has regarding the unanswered portion.

11. These Requests are continuing in nature. Should You subsequently discover any responsive Documents or Communications responsive to these Requests, You shall promptly produce any such additional Documents or Communications responsive to these Requests.

12. These instructions incorporate all related provisions in the Court's orders and local rules, and nothing herein shall be read to conflict with any requirement or deadline set forth therein.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents and Data sufficient to show, for each Academic Year during the Relevant Time Period, each Texas A&M University Division I College Athlete's Scholarship Status, Athletic Scholarship amount, duration of athletics-based financial aid, sport, Roster Status, and whether the athlete's Athletic Scholarship was awarded, renewed, modified, reduced, canceled, or not renewed.

**REQUEST FOR PRODUCTION NO. 2:** Documents sufficient to show, for each Academic Year during the Relevant Time Period, the structure of Athletic Scholarships awarded to Texas A&M University Division I College Athletes, including template agreements, standard forms, or representative scholarship agreements used by Texas A&M University, including template scholarship agreements, athletics financial aid agreements, grant-in-aid agreements, revenue-sharing agreements, athlete participation agreements, or other standardized agreements governing athletic participation or athletics-based financial benefits.

**REQUEST FOR PRODUCTION NO. 3:** Documents and Data sufficient to show, for each Academic Year during the Relevant Time Period, each Texas A&M University Division I College Athlete's Roster Status, including squad rosters, roster additions, removals, non-renewals, departures, transfers, graduate participation, and the dates of such changes, if maintained.

**REQUEST FOR PRODUCTION NO. 4:** Documents sufficient to show, for each Academic Year during the Relevant Time Period, Texas A&M University Division I College Athlete eligibility, including, but not limited to, eligibility status, exhaustion of eligibility, and any changes to eligibility status, eligibility status, eligibility determinations, seasons of competition used or remaining, and any changes thereto.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show, for each Academic Year during the Relevant Time Period, Texas A&M University Division I athlete Redshirt status, including, but not limited to, Participation Records, Redshirt status (including medical Redshirts), identification of the type of Redshirt status (standard, academic, medical, special waiver), and any changes to participation during the season, including whether the athlete preserved a season of competition, exhausted a season of competition, or received any exception affecting the athlete's remaining eligibility.

**REQUEST FOR PRODUCTION NO. 6:** Documents and Data sufficient to show, for each Academic Year during the Relevant Time Period, the existence, administration, and disposition of Eligibility Exceptions, waivers, appeals, eligibility extensions, legislative relief, or other deviations from NCAA Eligibility Rules applicable to Texas A&M University Division I College Athletes.

**REQUEST FOR PRODUCTION NO. 7:** Documents and Communications created, sent, received, or maintained during the Relevant Time Period sufficient to show Texas A&M University's interpretation, application, implementation, or exercise of discretion concerning NCAA Eligibility Rules, including Eligibility Exceptions, waivers, appeals, extensions, legislative relief, or other deviations from standard eligibility requirements.

**REQUEST FOR PRODUCTION NO. 8:** All Documents and Communications concerning Texas A&M University's policies, procedures, practices, criteria, or decision-making process for evaluating, recommending, supporting, opposing, approving, denying, or appealing Eligibility Exceptions, waivers, legislative relief, eligibility extensions, or other requests for relief from NCAA Eligibility Rules, including Communications with the NCAA, any Conference, or any College Athlete regarding such matters.

<u>**REQUEST FOR PRODUCTION NO. 9**</u>: Documents sufficient to show, for each Academic Year during the Relevant Time Period, the process and outcomes of appeals of eligibility determinations for Texas A&M University Division I College Athletes, including appeal requests, appeal outcomes, and any resulting modification of a College Athlete's eligibility.

<u>**REQUEST FOR PRODUCTION NO. 10**</u>: All Documents and Communications created, sent, received, or maintained during the Relevant Time Period that discuss, analyze, evaluate, or concern the recruitment or retention of College Athletes in connection with the Four Seasons Rule, the Redshirt Rule, the Five-Year Rule, the Age-Based Eligibility Rule, the Transition Exclusion, or any proposal to modify or replace those rules, including discussions of the impact of such rules on recruiting strategy, roster planning, or athlete retention.

<u>**REQUEST FOR PRODUCTION NO. 11**</u>: All Documents, analyses, summaries, presentations, reports, forecasts, or other materials evaluating the financial value, distributional effects, implementation, or competitive impact of Revenue Sharing, Direct Payments, or other institutional compensation provided or proposed to be provided to Texas A&M University Division I College Athletes during the Relevant Time Period.

<u>**REQUEST FOR PRODUCTION NO. 12**</u>: Documents sufficient to show how NCAA Eligibility Rules affect, or are expected to affect, College Athletes' eligibility for, access to, amount of, or duration of Athletic Scholarships, Revenue Sharing, Direct Payments, or other institutional compensation.

<u>**REQUEST FOR PRODUCTION NO. 13**</u>: All Documents and Communications concerning the actual or anticipated effect of the Five-Year Rule, the Age-Based Eligibility Rule, the Transition Exclusion, or any proposal to permit five seasons of competition within a five-year eligibility period on College Athletes' eligibility for, access to, receipt of, or amount of Revenue

Sharing, Direct Payments, NIL opportunities facilitated by Texas A&M University, or affiliated collectives, or other institutional compensation.

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications concerning the actual or anticipated effect of the Five-Year Rule, the Age-Based Eligibility Rule, the Transition Exclusion, or any proposal to modify the Four Seasons Rule or Redshirt Rule on Texas A&M University's roster management, athlete retention, scholarship allocations, Revenue Sharing, Direct Payments, recruiting strategy, or other decisions concerning Division I College Athletes.

**REQUEST FOR PRODUCTION NO. 15:** All Documents and Communications concerning the development, proposal, consideration, adoption, implementation, interpretation, or enforcement of the Five-Year Rule, the Age-Based Eligibility Rule, or the Transition Exclusion, including Communications with the NCAA, any Conference, or any NCAA Member Institution.

**REQUEST FOR PRODUCTION NO. 16:** Documents sufficient to show any actual or anticipated effect of the Five-Year Rule, the Age-Based Eligibility Rule, or the Transition Exclusion on Your athletic programs, including with respect to roster composition, recruiting, retention, scholarship allocations, Revenue Sharing, Direct Payments, athletics budgeting, financial aid, or administrative operations.

**REQUEST FOR PRODUCTION NO. 17:** Documents sufficient to show whether You recruited, sought to recruit, retained, sought to retain, rostered, sought to roster, or would have recruited, retained, or rostered any College Athlete who completed or was deemed to have completed a fourth season of competition during the 2025-26 Academic Year if that College Athlete had been eligible to compete under the Age-Based Eligibility Rule notwithstanding the Transition Exclusion.

**<u>REQUEST FOR PRODUCTION NO. 18</u>:** All Documents and Communications concerning Your implementation of the Age-Based Eligibility Rule or the Transition Exclusion, including any guidance, instructions, policies, procedures, or communications provided to coaches, compliance personnel, athletics administrators, or College Athletes.

**<u>REQUEST FOR PRODUCTION NO. 19</u>:** All Documents and Communications concerning whether Texas A&M University supported, opposed, commented on, or provided feedback regarding the Five-Year Rule, the Age-Based Eligibility Rule, the Transition Exclusion, or any proposal to exclude the graduating classes of 2021 or 2022 from expanded eligibility.

# EXHIBIT B

RECEIVED FOR ENTRY
M

SEP 12 2018

CLERK

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: DEFAULT STANDARD FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION | ) ) ) ) | Administrative Order No. 174-1 |

ADMINISTRATIVE ORDER

**1. Introduction.** This Administrative Order supersedes Administrative Order No. 174 entered on July 9, 2007. The following default standards shall apply until such time, if ever, the parties reach an alternate written agreement signed by all parties or their counsel governing the conduct of electronic discovery (or "eDiscovery"). The parties shall be prepared to submit any such agreement to the Court promptly upon the Court's request. In an appropriate case with minimal electronic discovery, the parties may, with the Court's permission, elect to opt-out of electronic discovery procedures altogether. In any such case, however, if further developments warrant, the Court may apply the standards of this Administrative Order.

**2. General disclosures.** At or before the Rule 26(f) conference (held before the initial case management conference), the parties shall exchange and discuss the following information:

a. **Data Custodians.** A list of the most likely custodians of discoverable electronically stored information (ESI) (including individual parties), together with each person's employer and job title.

b. **Non-Custodial Data Sources.** A list of any non-custodial data sources (e.g., shared drives, internal servers, enterprise databases or applications) over whom the party has authority likely to contain discoverable ESI.

c. **Non-Party Data Sources.** A list of any non-party data sources likely to contain discoverable ESI (e.g., third-party email and/or mobile device providers, vendors, contractors, ISPs, social media providers).

d. **Inaccessible Data.** A list of any data sources likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2). ESI not reasonably accessible may include data created or stored in electronic media no longer in normal use, maintained in redundant electronic storage media, or for which retrieval involves disproportionate cost.

e. Notice of any known problems with electronic discovery.

If the parties need additional time to have a meaningful discussion of the items in sections 2.a – 2.e by the time of the initial case management conference, the parties shall either agree on a

date by which this information will be mutually exchanged or be prepared to discuss the issues with the Court at the initial case management conference.

**3. Checklist.** In cases where the discovery of ESI is likely to be at issue, the Court expects the parties to engage in on-going meet and confer discussions on ESI and use the attached Checklist (Attachment A) to guide those discussions.

**4. Preservation.**

A party has an obligation to take reasonable and proportional steps to preserve discoverable ESI in the party's possession, custody or control. The producing party is best situated to evaluate and defend the methods and protocols appropriate for preserving its own ESI.

a. The following categories of ESI do not automatically have to be preserved, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

  i) Active ESI in a format whose preservation requires modification of the procedures used by the producing party in the ordinary course of business to back up and archive data;

  ii) Data in metadata fields that are frequently updated automatically; and

  iii) Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business, including legacy or not reasonably accessible ESI.

b. The Court expects the parties to confer regarding particular date ranges, custodians, types of ESI, and sources of ESI both to minimize the costs and burdens of preservation and to ensure that needed ESI is preserved.

c. If a dispute arises regarding the scope of a party's obligation to preserve ESI, any party may seek an expedited ruling from the Court on the issue. If appropriate, the Court may require a party who has made an overbroad or disproportionate preservation demand to bear some or all of the producing party's expenses in preserving the disputed ESI.

**5. Collection.** The producing party is in the best position to determine the method by which it will collect ESI. Parties need not collect ESI before they have conferred regarding the form of production at the Rule 26(f) conference. To the extent the parties have a dispute regarding the method of collection, the parties should be prepared to submit promptly such a dispute to the Court for resolution.

**6. Search.** The producing party is best situated to evaluate the methods and protocols appropriate for searching its own ESI. ESI searches shall be done using methods and protocols selected by the producing party, if reasonable and likely to locate relevant ESI. The Court expects the parties to discuss potential methodologies for identifying ESI for production. To the extent the parties have a dispute regarding search methodology, the parties should be prepared to submit promptly such a dispute to the Court for resolution.

**7. Form of Production.** If, during the course of the Rule 26(f) conference, the parties cannot agree to the form(s) of production, ESI shall be produced in a form or forms that is reasonably usable and proportionate, considering such factors as the cost of the form(s) of production, the volume of ESI at issue, and whether there is a need for searchability and metadata. In most cases, the parties need not produce metadata that is not preserved in a "drag and drop" collection. To the extent the parties have a dispute regarding form of production, the parties should be prepared to submit promptly such a dispute to the Court for resolution.

**8. Privilege.**

a. The production of ESI shall not constitute a waiver of the attorney-client privilege or work product protection, even though there is a failure to take reasonable steps to prevent production of information covered by the attorney-client privilege or work product protection, or a failure to take reasonable steps to rectify the error.

b. Parties are not required to include on privilege logs any document generated after the filing of the complaint. If a log is produced, the Court expects the parties to discuss foregoing using traditional document-by-document logs in favor of alternate logging methods, such as identifying information by category or including only information from particular metadata fields (e.g., author, recipient, date). Compliance with the logging provisions of this section shall not constitute a waiver of any privilege or protection.

c. No provision of this Order limits the authority of the Court to issue a non-waiver order on other terms and conditions pursuant to Fed. R. Evid. 502(d).

**9. Costs.** The costs, including attorney fees and vendor fees, of eDiscovery normally shall be borne by the producing party. However, the Court may apportion the costs of eDiscovery upon a showing of good cause. The Court, on motion of one of the parties, will consider the following non-exclusive factors in determining whether any or all eDiscovery costs should be borne by the requesting party: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production compared to the amount in controversy; (4) the total cost of production compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits of obtaining the information.

10. **Court Order.** Nothing in this Order limits the authority of the Court to issue an eDiscovery order on other terms and conditions. This Order may be amended, in whole or in part, by further Order of the Court.

It is so **ORDERED.**

**Waverly D. Crenshaw, Jr.**
**Chief United States District Judge**

**Aleta A. Trauger**
**United States District Judge**

**William L. Campbell, Jr.**
**United States District Judge**

**ATTACHMENT A –**
**CHECKLIST FOR RULE 26(f) MEET AND CONFER REGARDING ESI**

The discussions and use of this checklist should be framed in the context of the specific claims and defenses involved. The usefulness of particular topics on the checklist, and the timing of discussion about these topics, may depend on the nature and complexity of the matter.

I. Preservation

☐ The ranges of creation or receipt dates for any ESI to be preserved.

☐ A list of any data sources likely to contain discoverable ESI that a party asserts is not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved under Fed. R. Civ. P. 26(b)(2).

☐ A description of data from sources that (a) the party believes could contain relevant information but (b) has determined, under the proportionality factors, should not be preserved.

☐ Whether or not to continue any document destruction program, such as ongoing erasures of e-mails and other electronically-recorded material.

☐ The names and/or general job titles or descriptions of custodians for whom ESI will be preserved (e.g., "HR head," "scientist," "marketing manager," etc.).

☐ A list of the most likely custodians of discoverable ESI for whom ESI will be preserved.

☐ A list of any non-custodial data sources likely to contain discoverable ESI that will be preserved.

II. Proportionality and Costs

☐ The amount and nature of the claims being made by either party.

☐ The nature and scope of burdens or costs associated with the proposed preservation and discovery of ESI.

☐ The likely benefit of the proposed discovery.

☐ Costs that the parties will share to reduce overall discovery expenses, such as the use of a common electronic discovery vendor or a shared document repository, or other cost-saving measures.

☐ Limits on the scope of preservation or other cost-saving measures.

- ☐ The availability of relevant ESI from other sources.

III. Informal Discovery About Systems

- ☐ Description and location of systems in which discoverable information is stored.
- ☐ How discoverable information is stored.

IV. Search

- ☐ The volume and searchability of any likely relevant ESI.
- ☐ The search method(s) that will be used to identify discoverable ESI and filter out ESI that is not subject to discovery.

V. Phasing

- ☐ Whether it is appropriate to conduct discovery of ESI in phases.
- ☐ Sources of ESI most likely to contain discoverable information and that will be material to proof of claims and defenses raised in the pleadings.
- ☐ Sources of ESI less likely to contain discoverable information from which discovery will be postponed or avoided.
- ☐ Custodians (by name, employer and/or job title) most likely to have discoverable information material to proof of claims and defenses raised in the pleadings.
- ☐ Custodians (by name, employer, and/or job title) less likely to have discoverable information and from whom discovery of ESI will be postponed or avoided.

VI. Production

- ☐ The formats in which structured ESI (database, collaboration sites, etc.) will be produced.
- ☐ The formats in which unstructured ESI (email, presentations, word processing, etc.) will be produced.
- ☐ The extent, if any, to which metadata will be produced and the fields of metadata to be produced.
- ☐ Whether there is a need for searchability.

VII. Privilege

- ☐ How any production of privileged or work product protected information will be handled.
- ☐ Whether the parties can agree upon alternative ways to identify documents withheld on the grounds of privilege or work product to reduce the burdens of such identification.

- ☐ Whether the parties will enter into a Fed. R. Evid. 502(d) Stipulation and Order that addresses inadvertent or agreed production.

VIII. Miscellaneous

- ☐ Whether there are any known problems with electronic discovery.
- ☐ Whether the parties agree that all correspondence, discovery requests and the like may be exchanged by electronic mail.

RECEIVED FOR ENTRY
_____M
JUL 09 2007
CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE: DEFAULT STANDARD FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("E-DISCOVERY") ) Administrative Order No. 174

**ADMINISTRATIVE ORDER**

**1. Introduction.** The court expects the parties to cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the time of the Rule 16[1] initial case management conference, the following default standards shall apply until such time, if ever, the parties reach agreement and conduct e-discovery on a consensual basis.

**2. Discovery conference.** At or before the Rule 26(f) conference (which is to be held at least 21 days before the initial case management conference), the parties shall exchange and discuss the following information:

a. A list of the most likely custodians of relevant electronically stored information ("identified custodians"), including a brief description of each person's title and responsibilities.

b. A list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system. The parties shall also include other pertinent information about their electronically stored information and whether that electronically stored information is of limited accessibility Electronically stored information of limited accessibility may include that created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost

c. The name of the individual designated by a party as being most knowledgeable regarding that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above.

[1]All references to "Rules" herein are to the Federal Rules of Civil Procedure.

d. The name of the individual who shall serve as that party's "e-discovery coordinator" (see ¶ 3).

e. Notice of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above by the time of the initial case management conference, the parties shall either agree on a date by which this information will be mutually exchanged or be prepared to discuss the issues with the court at the initial case management conference.

**3. E-discovery coordinator.** In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through whom all e-discovery requests and responses are coordinated ("the e-discovery coordinator"). Regardless of whether the e-discovery coordinator is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be:

a. Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions.

b. Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

c. Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the parties and their attorneys of record shall be responsible for responding to e-discovery requests. However, the e-discovery coordinators shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

**4. Timing of e-discovery.** Discovery of relevant electronically stored information shall proceed in a sequenced fashion After receiving requests for document production, the parties shall search their documents, other than those identified as not reasonably accessible because of undue burden or cost, and produce, subject to any objections appropriate under the Federal Rules of Civil Procedure, relevant responsive electronically stored information.

**5. Search methodology.** If the parties intend to employ an electronic search to locate relevant electronically stored information, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronically stored information. The parties shall use their best efforts to reach agreement as to the method of searching and the words, terms, and phrases to be searched with the assistance of the respective e-discovery coordinators, who are charged with familiarity with the parties'

respective systems. The parties also shall use their best efforts to reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (*e.g.*, time frames, fields, document types).

6. **Format.** If, during the course of the Rule 26(f) conference, the parties cannot agree to the format for document production, electronically stored information shall be produced to the requesting party as image files (*e.g.*, PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, *i.e.*, the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronically stored information in its native format.

7. **Retention.** At or before the Rule 26(f) conference, the parties shall attempt to reach an agreement that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronically stored information. In order to avoid later accusations of spoliation, a Rule 30(b)(6) deposition of each party's retention coordinator may be appropriate.

The retention coordinators shall:

a. Take steps to ensure that relevant e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that relevant electronically stored information maintained by the individual custodians shall not be altered.

b. Provide notice of the criteria used for spam and/or virus filtering of e-mail and attachments. E-mails and attachments filtered out by such systems shall be deemed non-responsive, so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of designating the identified custodians, the retention coordinators shall implement the above procedures.

8. **Privilege.** Electronically stored information that contains privileged information or attorney-work product shall be immediately returned if the documents appear on their face to have been inadvertently produced, or if there is notice of the inadvertent production within thirty (30) days of such. In all other circumstances, Rule 26(b)(5)(B) shall apply.

9. **Costs.** Generally, the costs of discovery shall be borne by each party. However, the court may apportion the costs of electronic discovery upon a showing of good cause.

**10. Court Order.** Nothing herein limits the authority of a Judge to issue an e-discovery order on other terms and conditions. This Administrative Order may be amended, in whole or in part, by further Order of the Court.

It is so **ORDERED**.

TODD J. CAMPBELL
Chief United States District Judge

ALETA A. TRAUGER
United States District Judge

WILLIAM J. HAYNES, JR.
United States District Judge